UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OSR Enterprises AG and OSR R&D ISRAEL LTD., <br><br> *Plaintiffs*, <br><br> -against- <br><br> REE Automotive Ltd., REE Automotive Holding, Inc. and REE Automotive USA Inc., <br><br> *Defendants*. | Civil Action No. 1:22-cv-01327-LY |

**PLAINTIFFS' OPPOSED MOTION TO COMPEL JURISDICTIONAL AND VENUE DISCOVERY AND FOR AN EXTENSION OF TIME TO FILE PLAINTIFFS' OPPOSITION BRIEF TO THE MOTION TO DISMISS OR TO STAY THE COURT'S <u>RULING UNTIL SUCH DISCOVERY OCCURS</u>**

Pursuant to Federal Rules of Civil Procedure ("Rules") 26(d), 30(b), 33(a), and 34(b), OSR respectfully seeks: (1) jurisdictional and venue discovery and (2) an extension of time to file its opposition to REE's motion to dismiss on *forum non conveniens*, personal jurisdiction, and statute of limitations grounds (the "Motion")—now due June 7—or, alternatively, a stay of this Court's ruling so that OSR may incorporate such discovery in its response and/or an amended pleading.[1]

## INTRODUCTION

As detailed in OSR's AC, REE stole from OSR billions-of-dollars' worth of technology—including source code—for an artificial intelligence platform to control smart and self-driving cars. REE marketed OSR's technology as its own—including in Texas—in order to transform itself into an electric vehicle ("EV") company that was differentiated from its more advanced competitors so that REE could go public through a SPAC-merger transaction with the U.S. company, 10X (now REE Holding), and become traded on the NASDAQ.

The key to REE's global "go-to-market" strategy is the U.S., and in particular Texas—which is rapidly becoming a worldwide center for autonomous and EV technology (AC ¶¶45, 51-52; *id.* ¶¶ 252-254). REE Automotive thus established a North American headquarters for itself and its subsidiaries in Texas—which REE has called its new "home"—where REE is building a manufacturing plant it hopes to open as soon as this summer to bring to market its "REEPlatform" based on trade secrets misappropriated from OSR (the "Trade Secrets"). REE also partnered with Texas-based companies, EAVX and J.B. Poindexter, through which REE is developing, marketing, and actually selling a van based on the REEPlatform, and entered into distribution and servicing agreements with another Texas based-company. Further, REE used the Trade Secrets to

---

[1] Undefined capitalized terms are defined in the amended complaint ("AC"). OSR is separately opposing REE's motion to stay discovery primarily on the ground of forum non conveniens.

obtain money from investors in the U.S. and Texas, and grants from Texas government entities, which REE is using to market, develop, disclose, and sell the Trade Secrets.

REE seeks to muddy the waters by focusing on where the mere *acquisition* of the Trade Secrets occurred. Yet, REE's marketing, investment solicitation, selling, and disclosures of Trade Secrets here—both actual and threatened—constitute misappropriation under the Defend Trade Secrets Act ("DTSA") and Texas Uniform Trade Secrets Act and common-law unfair competition in the State. REE also seeks to draw imaginary lines between: (1) REE Automotive—the publicly traded parent headquartered in Israel; (2) REE USA—its agent through which REE Automotive apparently markets and sells the REEPlatform in the U.S.; and (3) REE Holding—whose role is uncertain, except that REE Holding raised money from investors in Texas based on the Trade Secrets to take REE public. In support, REE submits a declaration from Joshua Tech ("Tech Decl.") who **lives in Austin**. (ECF 34-1; AC ¶49; Ex. 1.) The only thing Tech's declaration establishes is the number of open and disputed factual issues that require discovery.

For example, Tech avers that **REE Automotive** has not "sold" any products used or consumed in Texas "in the ordinary course," while saying nothing about REE Holding or REE USA. REE *has* taken orders from a Texas distributor and through partnerships with Texas companies. (Ex. 2 at 44; Ex. 3.) Tech also says **REE USA** pays its own employees in the U.S. Yet Austin-based Tech—REE's "Global Chief Operating Officer" ("COO")—fails to say which REE entity employs him. (*See* Ex. 10.) REE has numerous overlapping officers and directors. And while Tech claims that REE USA signed the Texas lease, REE disclosed that the property serves as the U.S. headquarters and manufacturing center for REE Automotive *and its* subsidiaries.[2]

---

[2] Much of the Tech Declaration is not based on personal knowledge. Tech states that he is "familiar with the organizational structure of" Defendants, but not with each Defendant's operations, real estate, employees, or taxes—all subjects to which he improperly attests. *See*

REE's responses to OSR's jurisdictional and venue discovery requests are, by agreement of the parties, due May 26. However, REE has stated that it opposes any discovery. OSR thus respectfully requests that the Court: (1) order REE to respond to OSR's already pending jurisdictional discovery requests (Exs. 4-5) and provide Rule 30(b)(6) deposition(s); and (2) extend OSR's time to respond to the Motion and/or grant OSR leave to amend its complaint prior to ruling so that OSR may incorporate facts learned from such discovery.

## ARGUMENT

Courts have broad discretion to permit jurisdictional and venue discovery, and "must adhere to the liberal spirit of the Rules," which "favor broad discovery." *Nat. Polymer Int'l Corp. v. Gambol Pet USA, Inc.*, 2021 WL 3027333, at *2 (E.D. Tex. Apr. 23, 2021); *Next Techs., Inc. v. ThermoGenosis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015). To obtain discovery, OSR need only make a "'preliminary showing of jurisdiction,' a lesser standard than a prima facie case." *Silicon Lab'ys Inc. v. Maxlinear, Inc.*, 2012 WL 12892287, at *1 (W.D. Tex. Oct. 11, 2012) (citation omitted). If, as here, "there are disputed jurisdictional facts and further discovery could produce information supporting an exercise of jurisdiction, discovery is appropriate." *Id*. In fact, discovery should be denied only if "it is **impossible** that discovery 'could . . . add[ ] any significant facts' . . . . Since evidence of jurisdictional facts is often largely . . . in the possession of an adverse party, broad jurisdictional discovery . . . ensures that jurisdictional disputes will be 'fully and fairly' presented." *Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (allowing jurisdictional and venue discovery).

Further, jurisdictional discovery is appropriate in response to a *forum non conveniens*

---

*Lowe v. Scott & White Health Plan*, 2018 WL 7821101, at *2-3 (E.D. Tex. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 968882 (Feb. 28, 2019) (striking declaration where declarant failed to explain basis of knowledge, including job duties).

motion where, as here, there is "sufficient overlap between the facts relevant to a forum non conveniens inquiry and those relevant to a personal jurisdiction inquiry." *Neas Ltd. v. OJSC Rusnano*, 2016 WL 5724966, at *6 (N.D. Cal. Sept. 30, 2016) (noting that existence of defendant's office in the jurisdiction, as alleged by plaintiff, would contradict *forum non conveniens* dismissal).

I.   **OSR MADE A PRELIMINARY SHOWING OF PERSONAL JURISDICTION.**

OSR has made a preliminary showing of personal jurisdiction on the basis of general and specific jurisdiction, Rule 4(k)(2), agency, and alter ego, which issues are also directly relevant to *forum non conveniens*, including the nature and extent of REE's contacts with the forum.

   A.   **Direct General Jurisdiction: REE USA and REE Holding.**

OSR made a preliminary showing of direct general jurisdiction over at least REE USA and REE Holding, establishing a need for discovery, including based on disputed facts. General jurisdiction exists where a corporate defendant is essentially "at home"—generally, but not exclusively, its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 122, 137 (2014). Here, REE stated that "[w]e are excited to call Pflugerville—and Texas—home," based on its "U.S. headquarters" and "integration center"—a manufacturing facility—through which REE is "establishing a long-term presence in Texas." (AC ¶45; Exs. 6, 7.) Tech nevertheless claims that REE USA and REE Holding—both incorporated in Delaware—do not have *any* principal place of businesses. (Tech Decl. ¶5.) But elsewhere, Defendants have at different times represented that REE USA's principal place of business is in Texas (its "home"), in Washington D.C.—where there appears simply to be a shared office space and drop box (Exs. 7, 8)—and in California **(**Ex. 9**)**. Further, REE's SEC disclosures[3] state that *all* Defendants signed

---

[3] Ex. 2 at 4, 54 (stating "REE"—defined as "REE Automotive. . . and its subsidiaries," i.e., REE USA and REE Holding—"entered into a lease agreement for *its* Austin, Texas headquarters.").

4

the lease, which serves as *all* Defendants' North American headquarters. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("principal place of business" is "normally" headquarters).

All Defendants also have key employees in Texas, including Tech himself—who, as all Defendants' COO, is in charge of their global operations, manufacturing, and expansion, including developing and launching products based on the Trade Secrets. (AC ¶49; Ex. 10.)[4] Tech *implies* only REE USA has employees in Texas, but tellingly does not say what employees *other* Defendants have here; Tech himself omits which entities employ him. (Tech Decl. ¶2.)[5] Many other employees hold positions with multiple Defendants. (AC ¶¶49-50.)

These disputed facts alone warrant discovery as to REE's presence here. *See Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, 2019 WL 9516074, at *2 (W.D. Tex. Aug. 27, 2019) (Plaintiffs "clearly entitled" to jurisdictional discovery based on specific disputed factual allegations); *see also Ultravision Techs., LLC v. Govision, LLC*, 2020 WL 896767, at *2 (E.D. Tex. Jan. 21, 2020) (allowing discovery into whether defendant has a residence in the district under venue analysis), *report and recommendation adopted,* 2020 WL 887754 (Feb. 24, 2020).

OSR thus seeks discovery on, *inter alia*, who signed the lease and on whose behalf; REE's employees' location, responsibilities, and employer; and payment of rent, taxes, and other expenses associated with a physical office. (Ex. 4, Nos. 2, 7, 18, 19, 31, 35; Ex. 5, Nos. 2, 5, 7.)

**B. Specific Jurisdiction: All Defendants.**

    ***1. Direct Specific Jurisdiction.***

OSR made a preliminary showing of specific jurisdiction over all three Defendants based

---

[4] Defendants' Texas employees include REE's Director of Financial Planning & Analysis; Global and Assistant Global Controllers; and Talent and HR Specialist. (AC ¶49.)

[5] Tech states only that REE USA pays its own employees. (Tech Decl. ¶5.) But REE Automotive has a U.S. stock-option plan to award REE USA employees stock. (AC ¶265; Ex. 2 at 70-71.)

on their actual and threatened disclosures, manufacturing, marketing, sales, and fundraising in the State. A tort occurs not just when a trade secret is acquired, but also when it is disclosed or "used," or even merely ***threatened*** to be disclosed or used. 18 U.S.C. § 1839(5); *id.*, § 1836(b)(3)(A)(i) (court may enjoin ". . . threatened misappropriation"); *see also Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 332 S.W.3d 1, 18 (Tex. App. 2011) (contact with single Texas resident that did not result in actual venture supported personal jurisdiction for trade secret claim), *aff'd in relevant part,* 414 S.W.3d 142 (Tex. 2013). Use includes "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *See Canyon Furniture Co. v. Rueda Sanchez*, 2018 WL 6265041, at *10 (W.D. Tex. Nov. 8, 2018) (citation omitted.). Even if the "wrongful acquisition" occurs abroad, local marketing and sales constitute "use" for jurisdictional purposes. *Id.* (citation omitted). Further, Texas has an interest in compensating parties for injuries that arise from infringement occurring in the state. *Applica Consumer Prod., Inc. v. Doskocil Mfg. Co.*, 2008 WL 906320, at *1 (E.D. Tex. Mar. 31, 2008).

REE all but concedes specific jurisdiction over REE USA, focusing on REE Automotive and REE Holding. But Tech does not resolve jurisdiction as to any Defendant. *First*, Tech states that "REE Automotive" has not manufactured or serviced products that are ***used or consumed*** in Texas in the "***ordinary course*** of commerce." (Tech Decl. ¶12.) What REE does in the "ordinary course" is irrelevant; a single "use" conveys jurisdiction.[6] And REE has taken orders from a Texas dealership—one of only 5 dealerships with which REE has agreements—which REE is training to service the REEPlatform. (AC ¶¶53, 226-227; Ex. 2 at 44; Ex. 12.) "REE" also announced partnerships with Texas-based EAVX and J.B. Poindexter to develop, market, test, and actually

---

[6] Specific jurisdiction "may arise incident to the commission of a single act directed at the forum." *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

sell the REEPlatform. (AC ¶¶47, 143, 221; Ex. 2 at 44; Ex. 14.) Tech also omits what **REE USA or REE Holding** have done on REE Automotive's behalf. Nor does Tech deny that REE Automotive threatens to manufacture and actually marketed products in Texas—including at a Texas summit (AC ¶¶46-48, 214, 216, 221-222; Ex. 11)—which constitutes misappropriation.

*Second*, while REE USA purportedly leased the Texas property, it serves as a U.S. headquarters and manufacturing facility for *all* Defendants, through which REE USA has already or threatens to sell, market, and manufacture the REEPlatform, on behalf of REE Automotive and REE Holding. *Supra* at 4-5. Further, **REE Automotive** uses a cloud-based robotic system to directly control global manufacturing, including in Texas. (AC ¶271; Ex. 13.)

*Third*, REE has explicitly stated that it is targeting Texas to avail itself of Texas's laws and incentives plans as part of its critical "go-to-market" plan. (AC ¶¶51-53; Ex. 7.) *Moncrief Oil*, 414 S.W.3d at 153 ("Defendants' contacts were purposeful and substantial because their activity [in trade secret misappropriation] was *aimed at* getting extensive business in or from the forum state." (emphasis added) (citation omitted)).

*Fourth*, REE used the Trade Secrets to obtain grants from Texas government entities, which REE is using to develop, produce, market, and sell the REEPlatform in Texas. (AC ¶48).

*Fifth*, REE Holding (then 10X), knowing full well that the Trade Secrets were misappropriated—because OSR told it so—advertised them to investors as a primary competitive advantage to take REE Automotive public in the U.S., including using the Trade Secrets to market and sell securities to investors in Texas. (AC ¶¶239, 273). This is actionable "use." *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017) (trade secrets misused by defendants "accelerat[ing] their own progress in [self-driving car] development, [which] momentum would improve their ability to attract investors and talented engineers. . . .").

7

REE critiques OSR's inability to specify further which Defendant does what. But REE's SEC disclosures, and Tech himself, are vague and contradictory on that point. For example, Tech states that, to the best of his knowledge—the basis for which he fails to specify (*see supra* at 2)—"REE Automotive has not shared with or . . . involved REE Holding or REE USA [*sic*] any of the" intellectual property—whatever "***involved***" means. (Tech Decl. ¶8.) Yet REE USA apparently owns the lease for all three Defendants' U.S. headquarters through which REE USA will market, manufacture, and sell the REEPlatform in the U.S., on the other Defendants' behalf. (AC ¶271.)[7] And all Defendants are aware of, and a party to, the misappropriation, including through their shared officers and directors and consolidated control by one "chief operating decision maker." (AC ¶261-264; Ex. 2 at 131.) Tech thus only underlines OSR's need for discovery, including on, *inter alia*, intercompany agreements and agreements with Texas- and U.S.-based partners, distributors, funders, and customers. (Ex. 4, Nos. 4, 5, 10, 11, 13, 16, 26, 27; Ex. 5, Nos. 1, 4, 5.)

### 2.  *Agency Jurisdiction: REE Automotive and REE Holding*

OSR made a preliminary showing that REE Automotive and/or REE Holding are subject to specific jurisdiction based on the acts of their agent, REE USA, in Texas. *See Cano v. Assured Auto Grp.*, 2021 WL 3036933, at *9 (N.D. Tex. July 19, 2021); *see* AC ¶¶269-275. The key elements of an agency relationship are the principal's right to assign the agent's task and to control the means and details of the agent's process. *Rogers v. Nat'l Car Cure, LLC*, 2022 WL 10862294, at *3 (S.D. Tex. Oct. 19, 2022) (citation omitted). Discovery into agency is particularly appropriate given the "fact-intensive" inquiry. *Cano*, 2021 WL 3036933, at *9.

REE Automotive and REE Holding use REE USA to market, manufacture and sell the

---

[7] REE Automotive acts "through its subsidiaries in various countries . . ., in part through intercompany service agreements . . . ." (*See, e.g.*, Ex. 2 at 28).

8

REEPlatform, directly and through distribution and partnership agreements in Texas. (AC ¶271; *supra* at 1, 6-7.) REE Automotive and REE Holding's right to control the means and details of the process is evidenced by, *inter alia*: (1) REE Automotive's 100% ownership of REE Holding and REE USA (AC ¶262); (2) at least 3 common officers and directors (*id.* ¶¶261, 264); (3) "consolidated" decisions-making by a "chief operating decision maker" (*id.* ¶262; Ex. 2 at 131); (4) REE Automotive funding REE USA's operations (AC ¶267; *supra* at 4-5); (5) REE Automotive paying REE USA salaries, including of shared officers and through stock grants (*id.*); and (6) REE Automotive's direct control of REE USA's manufacturing (*supra* at 7.)

### 3. Rule 4(k)(2) Jurisdiction: REE Automotive

OSR has preliminarily shown that REE Automotive is alternatively subject to Rule 4(k)(2) jurisdiction because it is not subject to jurisdiction in any single state and its contacts with the U.S. as a whole satisfy due process. *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018), *aff'd*, 836 F. App'x 215 (5th Cir. 2020). REE Automotive, *inter alia*, has: (1) targeted the U.S. for its laws and incentives and "prioritize[ed] customers who have significant market share in the U.S." as its "go-to-market" strategy (AC ¶52); (2) 95% of its shareholder class as U.S. companies (AC ¶¶214); (3) fundraised on the Trade Secrets in the U.S. to become publicly traded (AC ¶¶229-237); and (4) will manufacture 50% of its products here (Ex. 13).

### C. Alter Ego Jurisdiction

"[T]he alter ego test for . . . personal jurisdiction[]" is "less stringent" than that for liability and involves different factors. *Gernsbacher v. WPCP Distribs., LLC,* 2022 WL 2652010, at *3 (N.D. Tex. July 8, 2022) (quotation omitted). Allegations of fraud are "not pertinent" and veil-piercing is more readily available for tort claims, as here. *Id.* The relevant factors support alter ego jurisdiction here. In addition to the above, *supra* Section I.B.2: (1) REE claims REE Holding and REE USA have ***no*** principal place of business (Tech Decl. ¶5); (2) REE failed to observe corporate

9

formalities (AC ¶266); (3) REE does not maintain separate accounting systems (AC ¶262); (4) REE Automotive controls all policies and even manufacturing (AC ¶263; *supra* at 7); and (5) REE USA and REE Holding are undercapitalized, relying on REE Automotive for financing (AC ¶267). *See Pacheco v. Dibco Underground, Inc.*, 2008 WL 11334107, at *2 (W.D. Tex. Aug. 7, 2008) (listing factors). This warrants jurisdictional discovery. *Nat. Polymer*, 2021 WL 3027333, at *3 (allowing discovery on "Gambol China's degree of control over Gambol USA" to establish alter ego jurisdiction in trade secret case); *Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, 2019 WL 2210686, at *4 (E.D. Tex. May 22, 2019) (allowing venue discovery concerning, *inter alia*, BMW Germany's control over U.S. dealerships).[8]

### C. The Targeted Discovery OSR Seeks is Relevant to Jurisdiction and Venue

The narrowly tailored discovery OSR seeks is relevant to jurisdiction and venue and will illuminate open and disputed issues of fact concerning, *inter alia*: (1) alter ego (*supra* at 10 n.8); (2) agency (*supra* at 8); (3) REE's contracts, marketing, disclosures, and sales, in the State (*supra* at 8); (4) REE's presence in the state through officers, employees, and shared headquarters (*supra* at 5); and (5) details concerning the contractual relationship among Defendants.

### D. Briefing or a Decision Should Be Stayed.

Good cause exists for the Court to stay its ruling on, or extend the time for OSR to oppose the Motion, to enable jurisdictional discovery and amendment. *See Cano*, 2021 WL 3036933, at *10 n.12 (ordering jurisdictional discovery and granting leave to amend accordingly).

### **CONCLUSION**

OSR respectfully request that the Court grant its motion.

---

[8] OSR thus seeks discovery relating to corporate structure and agreements (Ex. 4, Request No. 1), policies on financial records and filings (*id*. at No. 6), transfers of funds between REE entities (*id*. at No. 24), and the identities and responsibilities of shared officers and directors and the "chief operating decision maker" (*id*. at Nos. 31, 33).

| | |
|---|---|
| Dated:  May 12, 2023 | Respectfully submitted,<br><br>**KASOWITZ BENSON TORRES LLP**<br><br>**By:**<br><br>*/s/ Paul J. Burgo*<br>Marc E. Kasowitz<br>(admitted pro hac vice)<br>Paul J. Burgo<br>(admitted pro hac vice)<br>Daniel J. Koevary<br>(admitted pro hac vice)<br>Rachel Bandli<br>(admitted pro hac vice)<br>1633 Broadway<br>New York, New York  10019<br>Telephone:  (212) 506-1700<br>Facsimile:  (212) 506-1800<br><br>mkasowitz@kasowitz.com<br>pburgo@Kasowitz.com<br>dkoevary@kasowitz.com<br>RBandli@kasowitz.com<br><br>Constantine Z. Pamphilis<br>Attorney in Charge<br>1415 Louisiana Street, Suite 2100<br>Houston, Texas 77002<br>Telephone: (713) 220-8800<br>Facsimile: (713) 222-0843<br><br>DPamphilis@kasowitz.com<br><br>*Attorneys for Plaintiffs OSR Enterprises AG and OSR R&D Israel Ltd.* |

## CERTIFICATE OF CONFERENCE

I certify that a reasonable effort was made to resolve the dispute without the necessity of court intervention, and the effort failed. Specifically, on May 10, 2023, Counsel for Plaintiffs spoke with Defendants' Counsel about the filing of Plaintiffs' Motion to Compel Jurisdictional and Venue Discovery and for an Extension of Time to File Plaintiffs' Opposition Brief to the Motion to Dismiss or to Stay the Court's Ruling Until Such Discovery Occurs. Accordingly, the relief requested in the Motion has been specifically addressed, and Defendants' Counsel is opposed.

/s/ *Paul J. Burgo*
Paul J. Burgo

## CERTIFICATE OF SERVICE

I certify that on May 12, 2023 the foregoing document was filed with the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Paul J. Burgo*
Paul J. Burgo