## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| OSR Enterprises AG and OSR R&D ISRAEL LTD., <br><br> *Plaintiffs*, <br><br> -against- <br><br> REE Automotive Ltd., REE Automotive Holding, Inc. and REE Automotive USA Inc., <br><br> *Defendants*. | Civil Action No. 1:22-cv-01327-LY |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' OPPOSED MOTION FOR PROTECTION FROM DISCOVERY, OR IN THE ALTERNATIVE, TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS <u>FOR FORUM NON CONVENIENS</u>

Plaintiffs OSR respectfully submit this opposition to REE's Motion for Protection From Discovery, or in the Alternative, to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss for Forum Non Conveniens (the "Motion" or "Mot," ECF 25.)[1]

## INTRODUCTION

As detailed in OSR's AC, REE stole billions-of-dollars' worth of trade secrets concerning OSR's revolutionary centralized computer to control smart and self-driving cars using artificial intelligence ("AI"). REE needed OSR's trade secrets to differentiate itself from its more advanced competitors so that REE could go public through a SPAC-merger transaction with the U.S. company, 10X (now REE Holding), and become traded on the NASDAQ. REE thus recruited at least *nine* of OSR's contractually-restricted employees (the "Former Employees"), one of whom illegally took with him over a hundred thousand secret files, including source code, schematics, and algorithms (the "Trade Secrets"). Shortly after the Former Employees joined REE, REE's business model took a 180 degree turn from developing a largely mechanical system for electric vehicles ("EVs") to include a central computer with advanced AI capabilities—such as autonomous driving, fleet management, route optimization, and predictive maintenance— precisely mirroring capabilities OSR spent over a decade and enormous resources developing. REE has now established its North American headquarters in Texas, and is primarily marketing and selling its "REEPlatform" based on the Trade Secrets, directly and through Texas partners and dealerships, primarily to U.S. customers. (AC ¶¶ 43-53, 213-250.)

REE nonetheless moved to dismiss on, *inter alia*, *forum non conveniens* ("FNC") grounds

---

[1] Undefined, capitalized terms are defined in the Amended Complaint ("AC"). Citations to "Burgo Decl." refer to the Declaration of Paul Burgo and "Ordo Decl." refer to the Declaration of Avi Ordo, submitted herewith. "Ex." refers to exhibits to the Burgo Decl.

(the "MTD")[2] and to stay discovery pending that motion. However, REE falls far short of its burden to show "good cause" for a stay. Merely bringing an FNC motion—the sole basis by which REE seeks to stay all discovery—by no means alters the default rule requiring broad discovery, as REE contends. In fact, REE fails to meaningfully address at all how discovery would cause undue burden, as REE must. That is because, as OSR established in its May 12, 2023 motion to compel jurisdictional and venue discovery (ECF 35) (the "Cross Motion")—the discovery OSR seeks is narrowly tailored and necessary to resolve the many disputed and open issues of fact.

REE's MTD does not justify a stay on the merits of its FNC arguments either. While REE contends this case belongs in Israel, it is very unlikely that OSR would be able to pursue a cause of action under Israeli law based on REE's U.S. conduct or enjoin REE's extraterritorial conduct in Israeli courts. (*See generally* Ordo Decl.) The DTSA thus provides OSR critical remedies because of its extraterritorial reach and the fact that REE's use of the Trade Secrets is global.

REE—which is traded on the U.S. stock exchange—refers to itself as a "global" company. (Exs. A at 53, C at 4, K, L). Its manufacturing will occur not in Israel, but at "integration centers" in the U.K. and U.S. and the majority of its employees are outside of Israel, with REE having made commitments to employ 125-150 in Texas alone. (Exs. A at 48, 54, B, I, J.) REE's "go-to-market strategy," however, "prioritize[es]" the U.S., and centers around ***Texas***, which REE is "excited to call . . . home," based on its North American headquarters and integration center here.[3] (AC ¶45; Ex. B at 3; Ex. C.) REE is developing, marketing, and selling the REEPlatform through its partnerships with two ***Texas***-based companies, EAVX and JB Poindexter (AC ¶¶47, 143, 221-22) and through five ***U.S.-***based dealerships, including one in Texas. (AC ¶¶53, 213, 226-27; Ex. D.)

---

[2] OSR's opposition is due on June 7, 2023 by agreement of the parties (ECF 33).

[3] As the AC details (AC ¶¶251-56), the U.S.—and Texas—is the most important global market for developing, marketing, and selling, as well as fundraising for, both OSR and REE's products.

REE's funding comes largely from the U.S., including from Texas government grants funded by Texas-taxpayer money. (AC ¶¶48, 229, 232, 237-42; Ex. B.) REE's Global COO and affiant on the MTD—Joshua Tech—is also in Texas, as are numerous other key employees. (AC ¶¶49-50.)

## ARGUMENT

## I.   DEFENDANTS' MOTION IS MOOT

REE seeks a stay pending its motion to dismiss OSR's ***original*** complaint. That motion to dismiss was dismissed when OSR filed the AC (ECF 32), which moots REE's stay motion.[4]

## II.   THE MERE FILING OF AN FNC MOTION DOES NOT WARRANT A STAY

REE's argument for a stay relies almost entirely on *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007), which REE claims "encouraged lower courts to stay discovery pending rulings on FNC challenges." (Mot., 5.) That is a gross mischaracterization. *Sinochem* merely held that courts ***could*** "bypass[] questions of . . . jurisdiction" to address FNC first in cases where FNC dismissal is facially obvious, but recognized that "***[i]n the mine run of cases*** . . . both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of [jurisdictional] issues first." *Id.* at 432, 436 (cleaned up). Importantly, *Sinochem*, unlike here, presented "***a textbook case*** for immediate [FNC] dismissal," because the "gravamen" of the complaint related to a "misrepresentation to [a] [Chinese] Admiralty Court" and to pending parallel "proceedings long launched in China." 549 U.S. 422, 435-36 (emphasis added). *Ney*, also cited by REE (Mot., 6), likewise concerned a "textbook" FNC dismissal because it involved "mandatory forum-selection clauses." 2021 WL 8082411, at *14. The court also did ***not*** stay discovery on the basis of an FNC motion; it decided

---

[4] *See Garza v. Universal Healthcare Servs., Inc.*, 2017 WL 11646816, at *2 (S.D. Tex. Aug. 18, 2017) (striking motion to stay as mooted by new complaint); *Architettura, Inc. v. DSGN Assocs., Inc.*, 2017 WL 11638259, at *1 (N.D. Tex. Dec. 28, 2017) (noting same).

the motions together, denying the stay as moot.[5] *Id.* at *3.

The facts presented here do not warrant departure from the general rule that personal jurisdiction should be decided first, and, as shown in OSR's Cross Motion, discovery on jurisdiction and venue on both is necessary and appropriate.

## III.   DEFENDANTS HAVE NOT SHOWN GOOD CAUSE FOR A STAY

REE would improperly shift the burden to OSR to ***obtain*** discovery (Mot., 4, 8-9), when REE bears the burden to ***stay*** it.[6] The court in *U.S. v. Fresenius Med. Care N. Am.*, cited by REE, held that to establish good cause, a movant must show that it "would suffer annoyance, embarrassment, oppression or undue burden or expense absent a stay." 571 F. Supp. 2d 766, 767 (W.D. Tex. 2008) (denying stay). "Stereotyped and conclusory statements," instead of "a particular and specific demonstration of fact," do not satisfy REE's burden. *Beltran v. City of Austin*, 2022 WL 11455897, at *2 (W.D. Tex. Oct. 19, 2022) (quotations omitted). Further, "staying discovery based on a pending motion to dismiss is disfavored." *Hiser v. NZone Guidance, LLC*, 2019 WL 2098091, at *2 (W.D. Tex. Mar. 27, 2019). REE failed to meet its burden here.

### A.   REE Has Not Identified Any Undue Burden or Expense

REE in fact has made *no* showing of annoyance, embarrassment, oppression or undue burden or expense absent a stay. REE conclusorily asserts that OSR "propounded significant

---

[5] REE also cites *Schoen v. Underwood* (Mot. at 5), which did not involve an FNC motion and stayed discovery that, unlike here, would not "aid plaintiff' in contesting the motion to dismiss, because it related solely to the merits." 2011 WL 13238322, at *1 (W.D. Tex. July 18, 2011).

[6] (Mot. at 4, 8-9) REE's own case holds that "the burden . . . was on [defendants] to show why a protective order was warranted." *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990). *S.E.C. v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) involved nonmovant's burden to oppose *summary judgment*. And REE's contention that litigants need not keep with deadlines or move forward with discovery prior to the entry of a scheduling order (Mot. at 6 n.3) was rejected in *Shenzhen*, 2021 WL 1080795 at *2, as an inappropriate attempt to "place[] the burden on the wrong party."

***merit-based*** discovery requests that would be prohibitively costly and burdensome . . . to respond

to at this time." Mot. at 7 (emphasis added). This assertion is not only insufficient,[7] but untrue. As

OSR explains in its Cross Motion (ECF 35 at 5, 8, 10), OSR's discovery requests (Exs. E-F) are

narrowly tailored to jurisdiction and venue and are not unduly burdensome. To the extent REE

further objects, the parties can meet and confer.[8]

### B.    Defendants' FNC Motion Does Not Warrant a Stay

Here, a stay would also be inappropriate given the weakness of REE's FNC motion. FNC

dismissal "is the exception rather than the rule." *In re Air Crash Disaster Near New Orleans, La.*

*on July 9, 1982*, 821 F.2d 1147, 1164 n.26 (5th Cir. 1987). Foreign plaintiffs are entitled to

deference in their choice of forums. *Blum v. General Elec. Co.*, 547 F. Supp. 2d 717, 726 (W.D.

Tex. 2008) (denying dismissal where foreign plaintiffs, as here, allege at least some injury in

Texas). For both foreign and domestic plaintiffs, the choice of forum is entitled to greater deference

when, as here, it has been "dictated by reasons that the law recognizes as valid." *See Avalon*

*Holdings, Inc. v. BP p.l.c.*, *(In re BP P.L.C. Sec. Litig.)*, 109 F. Supp. 3d 946, 963-64 (S.D. Tex.

2014) (citation omitted). Here, REE's MTD fails to overcome that deference, as it must, by

showing both that (1) there is an adequate alternate forum available and (2) the balance of private

and public factors favor dismissal.[9] *See Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801

---

[7] *F.T.C. v. Educare Ctr. Servs., Inc.*, 2019 WL 9516075, at *2 (W.D. Tex. Aug. 30, 2019) (denying stay based on conclusory claims of breadth and burden).

[8] REE's responses are due by agreement of the parties on May 26.  (ECF 27 ¶6.)  REE rejected OSR's compromise offer to limit *all* discovery to jurisdictional and venue discovery pending REE's motion to dismiss.  Burgo Decl. 2.

[9] REE cites to inapposite cases granting stays. In *Starett v. Lockheed Martin Corp.*, 2018 WL 10345320, at *1 (N.D. Tex. Mar. 9, 2018), the Magistrate issued a stay after finding dismissal warranted.  *Hutchings v. Cnty of Llano, Texas*, 2020 WL 2086553, at *1 (W.D. Tex. Apr. 30, 2020) (Mot. at 4), involved immunity defenses to a *pro se* action.  Nor is this case comparable to *Bickford* and *Conquest* (Mot. at 4-5), because OSR needs "discovery . . . to develop facts" critical to its motion, *Bickford*, 2016 WL 1430063, at *2; *Conquest*, 2014 WL 172500 at *2, and

F. App'x 239, 242-43 (5th Cir. 2020) ("defendant bears the burden on all [FNC] elements . . . .").

### 1.  Israel Is Not An Adequate Forum In This Case

Where the proffered alternate forum is inadequate, an FNC motion should be denied. *Beijing iQIYI Sci. & Tech. Co. v. iTalk Glob. Commc'ns, Inc.*, 2019 WL 6876493, at *2 (W.D. Tex. Dec. 17, 2019). A forum is inadequate where the remedy it offers is "clearly unsatisfactory." *Id.* at *3. Indeed, "[u]navailability of a ***certain*** remedy is proper grounds for rejecting a *forum non conveniens* motion." *Dmarcian, Inc. v. Dmarcian Eur. BV*, 60 F.4th 119, 137 (4th Cir. 2023) (refusing FNC dismissal of DTSA claim); *see also CTF Cent. Corp. v. Inter-Cont'l Hotels Corp.*, 71 F.3d 877, at *8-9 (5th Cir. 1995) (vacating dismissal where "significant questions" existed of whether plaintiff's claims were available in Mexico). It is "particularly important that a[n] [FNC] movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights." *Dmarcian*, 60 F.4th at 137 (citation omitted).

Israel is inadequate because it is "very unlikely" that there is a cause of action for misappropriation under Israeli law based on REE's actions outside of Israel, or that OSR could enjoin conduct outside of Israel, whether by defendants themselves or their agents.[10] (Ordo Decl §13.1-.2.) Moreover, there is a significant question concerning whether OSR's unfair competition claim is cognizable in Israel, given that comparable claims: (1) could end up being preempted by Israel's trade secret law and (2) exist only in the context of a breach of a fiduciary duty in the employer/employee context (Order Decl. §13.3), but REE contends that the Former Employees do not work for REE USA or REE Holding. (Tech ¶3.)[11]

---

did not oppose the motion to dismiss prior to seeking discovery or responding to the stay motion.

[10] REE's agents include, *inter alia,* REE's Texas-based partners for building the REE Platform, EAVX and JB Poindexter, and REE's dealerships.

[11] *See Beijing*, 2019 WL 6876493, at *7 (China inadequate because claims would not be cognizable there); *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155,

Unlike Israeli law, the DTSA allows OSR to obtain extraterritorial injunctions. *Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *9-11 (E.D. Tex. May 13, 2019) (DTSA applied extraterritoriality despite defendant's claims that "all of the alleged occurrences supporting [plaintiff's] misappropriation claim 'took place between people in Israel . . . .'"); 18 U.S.C. § 1837. That remedy is critical to OSR given REE's global nature and because REE's misuse of the Trade Secrets occurs primarily ***outside*** Israel, including ***all*** of REE's manufacturing and its marketing, servicing, and sales through partnerships and dealerships. *See supra* 2-3; *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1278 (S.D. Fla. 2001) (forum inadequate where unable to award extraterritorial injunction sought by plaintiff).[12]

### 2. Private Interests Factors Weigh Against Dismissal

Private-interest factors weigh against dismissal. REE's FNC motion focuses on where its theft of Trade Secrets occurred (in fact, primarily at a trade-show in Germany (AC ¶21, 120-22)). However, misappropriation is not limited "wrongful acquisition," but also includes marketing and sales, *Canyon Furniture Co. v. Rueda Sanchez*, 2018 WL 6265041, at *10 (W.D. Tex. Nov. 8, 2018), and diverting fundraising and talent, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017). REE's "use" and "disclosures" of OSR's Trade Secrets primarily occur ***outside*** of Israel. *See supra* 2. Indeed, dismissal is improper because the dispute, and REE, is global (*see supra* 2);[13] even OSR Enterprises is a Swiss company. (AC ¶37.)

---

1164 (E.D. Mich. 2001) (Canada inadequate because injunctive relief sought unavailable there).

[12] In *Path to Riches, LLC ex rel. M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 287 (D. Del. 2018), the court found Israel to be adequate because "Plaintiff has presented no evidence, or even argument, that a legal remedy would be unavailable to it."

[13] *See ICHL, LLC v. NEC Corp. of Am.*, 2009 WL 1748573, at *6 (E.D. Tex. June 19, 2009) (denying transfer motion and finding convenience factor neutral when dispute is "global in its reach"); *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627, at *4 (E.D. Tex. Feb. 23, 2009).

Each FNC factor also weighs against dismissal. First, "relative ease of access to the sources [of proof]" "does not turn on . . . location," but ease of access. *Beijing*, 2019 WL 6876493, at *10. Here most or all of the relevant documentary evidence is electronic, and can be transmitted here easily. (*See*, *e.g.*, AC ¶¶118-122, 124-126, 166.) Even if physical location were relevant, other critical evidence is located in Texas and elsewhere in the U.S., as REE concedes (MTD at 12 n.8). And the rise of video conferencing in U.S. litigation avoids significant travel expenses.[14]

Further, while REE muses that "many documents will have to be translated from Hebrew" (MTD 12), its manufacturing occurs, and its dealers, partners, and most of its employees are all located, ***outside*** of Israel (Ex. A at 31, 48, 54, 82; *see supra* 2-3.) REE communicates with employees in English. (*See, e.g.*, Exs G, H.)[15] Source code is also in English (AC ¶219). And while it is unlikely ***any*** material non-Israeli witnesses (*infra* 8-9) speak Hebrew, ***all Former Employees*** represented their English fluency as a condition of employment (*see* AC ¶¶131, 133.)[16]

As to the second factor—availability of compulsory process and the cost of witness attendance—there are numerous material witnesses based in Texas and the U.S., including, for example, REE's global Chief Operating Officer, Austin-based Joshua Tech and other employees. And most of the critical non-party witnesses are in the U.S., including REE's U.S. investors, partners, distributors, and customers. (AC ¶¶35, 44, 47, 143, 221-228). The "convenience of non-party witnesses" are afforded more weight. *See WSOU Invs., LLC v. Microsoft Corp.*, 2021 WL

---

[14] *See Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) ("In this day and age of rapid transportation and instant communications, the . . . physical proximity to documents, testimony, and other proof has become of less consequence . . . .").

[15] *See also, e.g.*, https://ree.auto/?utm_term=ree% (videos of key REE employees in English).

[16] *See UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 221 (5th Cir. 2009) (FNC denial proper where "many of the [defendant's] witnesses were fluent in English, while [plaintiff's] witnesses were not fluent in Arabic, making the United States a preferable forum").

1298935, at *3 (W.D. Tex. Apr. 7, 2021). By contrast, virtually all of the witnesses located in Israel, as REE's employees, are subject to compulsory process in the U.S. (ECF 22-1 at ¶ 9).[17] Third-party discovery in Israel is also very limited; subpoenas are only allowed with court permission, and testimony and documents are produced at trial. (Ordo Decl. §13.6, 41-44.)

The possibility of viewing the relevant premises weighs against dismissal because Texas is the site of REE's U.S. headquarters and "integration center"; REE's key development partners, including EAVX and J.B. Poindexter; dealerships; and material evidence of misappropriation, including prototypes. (*See* AC ¶¶47-48, 221); *Spheretex GmbH v. Carbon-Core Corp.*, 2022 WL 1251315, at *8 (W.D. Va. Apr. 27, 2022) ("[T]he location of the allegedly infringing production line . . . significantly tips those factors in favor of retaining the case here.").

Finally, filing in Israel would require OSR to pay over $26 million in court fees, and potentially a substantial bond (Ordo Decl. §§45-47), militating further against dismissal.[18]

### 3. Public Interests Factors Weigh Against Dismissal

Public interest factors also weigh against dismissal. First, as to court congestion, Israeli courts' caseload is double or more than those in western countries and the time to trial in Israel would be no earlier than in Texas. (Ordo Decl. §40).[19]

Second, Texas and the U.S. have a strong interest in having the case decided here. As a

---

[17] *See Raytheon Eng'rs. & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279, 1998 WL 224531, at *5 (5th Cir. 1998) (reversing FNC dismissal where "most if not all of the witnesses located in Panama . . . are [defendants'] employees and therefore will be readily available to attend court . . . ."); *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 637 (W.D. Tex. 2016) (factor did not favor dismissal where "defendants can arrange for . . . attendance . . . of their employees").

[18] *See Macedo v. Boeing Co.,* 693 F.2d 683, 690 (7th Cir. 1982) (reversing FNC dismissal based in part on failure to consider financial hardship of paying approximately 1% in court fees).

[19] *See Sisk v. BWS Inspection Servs., LLC*, 2022 WL 3567349, at *9 (W.D. Tex. Aug. 16, 2022) (factor did not support dismissal where both forums congested).

general matter, the U.S. has a strong interest in seeing its intellectual property laws enforced, including the DTSA, which applies extraterritorially.[20] Texas in particular has an interest in compensating parties for injuries that arise from infringement occurring in the state. *Applica Consumer Prod., Inc. v. Doskocil Mfg. Co.*, 2008 WL 906320, at *1 (E.D. Tex. Mar. 31, 2008).

As detailed in the AC, the U.S., and in particular Texas, is also critical for both REE and OSR for fundraising, entering into partnerships, and selling their products and services. (AC ¶¶ 43-53, 213-250, 251-256.) Further, there is a strong connection between the U.S. and Texas and OSR's claims. In addition to the connections discussed *supra* 2-3, REE used OSR's Trade Secrets to obtain investments from investors in Texas and in the U.S.—REE is traded on the NASDAQ and 95% of its shareholder class are U.S. companies—and from Texas taxpayers who funded grants. (*See*, *e.g.*, AC ¶¶48, 51-53, 214, 229-42.) Texans have an interest in not having their money obtained through stolen trade secrets or to further misappropriation. *See Ochoa v. Empresas ICA, S.A.B. de C.V.*, 2013 WL 5674697, at *8 (S.D. Fla. Oct. 17, 2013) (balance of interests favored trying case concerning project largely funded with public funds in funding forum).

Third, U.S. law will govern OSR's claims, including its DTSA claim. *Luminati Networks*, 2019 WL 2084426, at *9. By contrast, as noted *supra* 2, 7, a claim based on Israeli law likely will not extend to Defendants' extraterritorial misappropriation conduct. (Ordo Decl. §13.2.)

## CONCLUSION

OSR respectfully requests that the Motion be denied in its entirety.

---

[20] *Dmarcian*, 60 F.4th at 137; *Luminati Networks,* 2019 WL 2084426, at *11; *TFC Partners, Inc. v. Stratton Amenities, LLC*, 2019 WL 369152, at *4 (W.D. Tex. Jan. 30, 2019) ("depriving [defendant] of the allegedly misappropriated trade secrets serves the public interest by furthering the purposes of the TUTSA"); *Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, 2020 WL 569815, at *9 (E.D. Tex. Feb. 5, 2020) ("the State of Texas has a strong interest in preventing . . . infringement within its borders" (citations omitted)).

Dated:  May 17, 2023

Respectfully submitted,

**KASOWITZ BENSON TORRES LLP**

**By:**

*/s/ Paul J. Burgo*
Marc E. Kasowitz
(admitted pro hac vice)
Paul J. Burgo
(admitted pro hac vice)
Daniel J. Koevary
(admitted pro hac vice)
Rachel Bandli
(admitted pro hac vice)
1633 Broadway
New York, New York  10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

mkasowitz@kasowitz.com
pburgo@Kasowitz.com
dkoevary@kasowitz.com
RBandli@kasowitz.com

Constantine Z. Pamphilis
Attorney in Charge
1415 Louisiana Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 220-8800
Facsimile: (713) 222-0843

DPamphilis@kasowitz.com

*Attorneys for Plaintiffs OSR Enterprises AG
and OSR R&D Israel Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on May 17, 2023, the foregoing document was filed with the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Paul J. Burgo*_____
Paul J. Burgo
